# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

MARCUS FIELDS                                                              PETITIONER
ADC #150118

V.                                    NO. 5:13CV00297 KGB/JTR

RAY HOBBS, Director,                                                    RESPONDENT
Arkansas Department of Correction

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

## **INSTRUCTIONS**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may

-1-

also waive any right to appeal questions of fact.

Mail your objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Room A149
> Little Rock, AR 72201-3325

## I. Background

Pending before the Court is a 28 U.S.C. § 2254 Petition for Writ of Habeas

Corpus filed by Petitioner, Marcus Fields ("Fields"). *Doc. 1*. Respondent, Ray Hobbs,

has filed a Response, *Doc. 11*, and Fields has filed a Reply, *Doc. 15*. Thus, the issues

are joined and ready for disposition.

Before addressing the merits of Fields's habeas claims, the Court will review

the procedural history of this case in state court.

On September 13, 2011, a Sebastian County jury convicted Fields of raping

D.A., a seven-year-old girl.[1] He was sentenced, as a habitual offender, to life

---

[1]At the time of trial, D.A. was 17 years old. She testified that, on one evening in November 2000 when she was watching a movie with her father, Fields came to their apartment and brought beer. D.A. went to her bedroom while her father and Fields drank in the living room. Later that night, Fields entered D.A.'s room and pulled her onto the bed. D.A. called for her father, who did not answer. Fields pulled down D.A.'s pajama pants, removed her shirt, laughed, and told her to be quiet. He then digitally penetrated her vagina.

D.A. tried to fight Fields and screamed for her father. After Fields left, D.A. left her room and saw her father passed out on the living room sofa surrounded by beer cans.

D.A. did not tell anyone about her experience until six years later, when she

imprisonment. *Resp't Ex. 1.*[2] During Fields's trial, the jury heard testimony from D.A.,

her mother, and a detective. In addition, over Fields's objection, the jury heard

testimony from M.E., D.S. and C.C., each of whom testified that, as children, Fields

had also sexually abused them.

On direct appeal, Fields argued that the trial court erred: (1) in denying his

motion for directed verdict; and (2) in denying his motion in limine to exclude

testimony offered pursuant to the "pedophile exception" to Ark. R. Evid. 404(b).[3]

While Fields's direct appeal was pending, he filed four *pro se* post-conviction

motions in the trial court.

(1)    On September 23, 2011, he filed a Rule 37 petition. The court
denied relief, and Fields did not appeal. *Resp't Ex. 2 & 3.*

---

entered the eighth grade. At that time, she confided in her friends and her youth pastor.
She later was admitted to the hospital for an autoimmune deficiency and told a
psychologist about the incident. An investigation began, resulting in the rape charge
against Fields.

[2]Respondent's exhibits are attached to *Docs. 11, 22* and *24.* Resp't Ex. 17 is the
transcript of Fields's pretrial and trial proceedings.

[3]Rule 404(b) provides that evidence of a criminal defendant's "other crimes,
wrongs, or acts" is not admissible to prove that he acted in conformity with such
character, but may be admissible "for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or
accident." *Fields v. State*, 2012 Ark. 353 at 5. However, the Arkansas Supreme Court has
recognized a "pedophile exception" to the general rule of inadmissibility, which allows
evidence of "similar acts with the same or other children when it is helpful in showing a
proclivity for a specific act with a person or class of persons with whom the defendant has
an intimate relationship." *Id.* at 6.

(2)     On September 29, 2011, he filed a motion "to overturn the jury guilty verdict." The court denied relief, and Fields did not appeal. *Resp't Ex. 4 & 5.*

(3)     On October 4, 2011, he filed a second Rule 37 petition. The court denied relief, and Fields did not appeal. *Resp't Ex. 6 & 7.*

(4)     On January 24, 2012, he filed a state habeas petition. The court denied relief, and Fields did not appeal. *Resp't Ex. 10 & 11.*

On September 27, 2012, the Arkansas Supreme Court rejected all of the arguments asserted by Fields in his direct appeal and affirmed his conviction. *Fields v. State*, 2012 Ark. 353 (unpublished).

Fields then filed two more *pro se* post-conviction petitions with the trial court:

(1)     On December 6, 2012, he filed a second state habeas petition. On January 4, 2013, the court granted Fields's motion to voluntarily dismiss the petition. *Resp't Ex. 12, 15 & 16.*[4]

(2)     On December 14, 2012, he filed a third Rule 37 petition. On December 17, 2012, the court denied relief, and Fields did not appeal. *Resp't Ex. 13 & 14.*

On December 14, 2012, Fields filed a motion seeking leave to pursue a "belated" petition for rehearing of his direct appeal. On March 14, 2013, the Arkansas Supreme Court denied that motion. *Fields v. State*, 2013 Ark. 117 (unpublished).

On September 16, 2013, Fields filed this habeas action. In his Petition, he

---

[4]He later filed a notice of appeal of the court's decision to grant his motion to voluntarily dismiss his second habeas petition. In dismissing this appeal, the Supreme Court noted that, in the order which served as the basis for the appeal, Fields got "precisely the relief that he sought." *Fields v. State*, 2013 Ark. 154 at 2-3 (unpublished).

argues that: (1) his trial attorney was ineffective; (2) the trial court violated his constitutional rights by requiring him to be shackled in the presence of the jury; (3) the trial court erred in denying his motion for directed verdict; and (4) the trial court improperly admitted evidence of other acts of sexual abuse.

Respondent contends that all of Fields's claims are either procedurally defaulted or fail on the merits. For the reasons explained below, the Court agrees with Respondent and recommends that this habeas action be dismissed, with prejudice.

## II. Discussion

### A.   Ineffective Assistance of Counsel Claim

Fields contends that he received constitutionally ineffective assistance of counsel because his trial attorney: (1) failed to adequately challenge "bad character testimony" from witnesses M.E., D.S. and C.C.; and (2) failed to notify him of a plea offer from the prosecutor.

According to Respondent, Fields procedurally defaulted both of these claims because he failed to raise them in a timely and proper state post-conviction petition,[5]

---

[5]Specifically, Respondent argues that: (1) Fields prematurely filed his first four post-conviction petitions while his direct appeal was still pending and while he was represented by counsel; (2) his third Rule 37 petition was barred as successive; (3) his first state habeas petition was improperly filed in the county where he was convicted, rather than the county in which he was incarcerated; and (4) his ineffective-assistance claims were not cognizable in his state habeas petitions. *Doc. 11, at 2-5, 7.*

and then did not properly appeal any of the denials of post-conviction relief to the Arkansas Supreme Court.

Before seeking federal habeas review, a state prisoner must first "exhaus[t] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). When a habeas petitioner fails to raise his federal claims in the state courts in compliance with the relevant state procedural rules, he "deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights." *Cone v. Bell*, 556 U.S. 449, 465 (2009).

Here, Fields clearly did not raise and exhaust his ineffective-assistance-of-counsel claim in the state courts of Arkansas. Accordingly, this Court is barred from reaching this procedurally defaulted claim unless Fields can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that the failure to consider his claim will result in a fundamental miscarriage of justice.[6] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

---

[6]Cause requires a showing of some objective factor, external to the petitioner's defense and not fairly attributable to him, impeding him from constructing or raising his claims in state court or complying with the state's procedural rules. *Coleman*, 501 U.S. at 753. If no cause has been shown, the prejudice element need not be addressed. *McCleskey v. Zant*, 499 U.S. 467, 502 (1991).

Fields does *not* allege "actual innocence," which is necessary to invoke the "fundamental miscarriage of justice" exception to the cause-prejudice requirement. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (where constitutional violation "has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default").

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the Court recognized that, in a narrow range of habeas cases, a petitioner can rely on his lack of counsel or ineffective assistance of counsel, which occurred at *the initial step of post–conviction review*, to establish "cause" to excuse his procedural default of an ineffective-assistance-of-counsel claim. Applying this exception to § 2254 habeas claims arising in Arkansas, a federal court "is allowed to find 'cause,' thereby excusing a habeas petitioner's procedural default ... where (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014); *see Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013).

In this case, Fields unquestionably lacked counsel during his post-conviction proceedings, and he did not properly raise his ineffective-assistance-of-counsel claim in any of his *pro se* papers. Thus, based on the record, it appears that Fields has satisfied the second and third elements necessary to establish "cause" to excuse his procedural default of the ineffective-assistance-of-counsel claim.

---

Accordingly, the Court need not address that issue.

However, for Fields to satisfy the first element of *Martinez* and *Dansby*, he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one." *Martinez*, 132 S. Ct. at 1318; *Dansby*, 766 F.3d at 834. According to the Court in *Martinez*, for an ineffective-assistance-of-counsel claim to be "substantial," the habeas petitioner must demonstrate that his claim: (1) has "some merit"; *and* (2) is supported by at least some facts. *Martinez*, 132 S. Ct. at 1318-19. If a habeas petitioner is unable to satisfy either part of this "substantiality test," his ineffective-assistance-of-counsel claim is procedurally defaulted and cannot be considered by a federal court in a § 2254 habeas action.

For an ineffective-assistance-of-counsel claim to have "some merit," a prisoner must establish that his attorney's conduct "fell below an objective standard of reasonableness ... under prevailing professional norms," *and* that the "professionally unreasonable" conduct of counsel "prejudiced the defense."[7] *Strickland v. Washington*, 466 U.S. 668, 687-88, 691-92 (1984). If a prisoner fails "to establish either *Strickland* prong [it] is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

Thus, to determine if Fields's ineffective-assistance-of-counsel claim has "some

---

[7]The defendant is prejudiced by the deficient performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, *infra* at 694.

merit," this Court must decide: (1) if Fields's trial counsel's alleged misconduct "fell below an objective standard of reasonableness"; and (2) if so, whether it "prejudiced the defense." If the *Strickland* standard is not met, as a matter of law, Fields's ineffective-assistance-of-counsel claim is "without merit" and cannot be deemed to be a "substantial" claim under *Martinez*.

### 1.     Trial Counsel's Alleged Failure to Adequately Challenge Prior Bad Acts Evidence

The prosecutor identified M.E., D.S. and C.C. as witnesses the state intended to call under the pedophile exception to Ark. R. Evid. 404(b). (Tr. 102-03.) Fields's counsel filed a motion in limine to exclude this testimony because: (a) it was not "independently relevant" to the charged conduct; (b) it did not meet the requirements for admissibility under the pedophile exception; (c) its probative value was substantially outweighed by the danger of unfair prejudice, confusion, undue delay, misleading the jury, and the cumulative nature of the evidence; (d) the allegations of prior sexual contact were "so remote in time" that the statute of limitations barred any prosecution of those crimes; and (e) admission of the testimony would violate the Due Process Clauses of the United States and Arkansas Constitutions. (Tr. 162-63.)

On September 13, 2011, the trial court conducted a hearing on Fields's motion in limine. (Tr. 264-325.) The state proffered a transcript of the testimony given by M.E. in a prior unrelated criminal proceeding against Fields, and proffered live

testimony from D.S. and C.C. (Tr. 273-80, 297-307.)

After considering the proffered testimony and hearing lengthy arguments from counsel about the pedophile exception to Ark. R. Evid. 404(b), the trial court: (a) denied Fields's motion in limine regarding the testimony of M.E. and C.C.; and (b) reserved a ruling on whether D.S. would be allowed to testify at trial. The court instructed the attorneys not to mention D.S. in either their voir dire or opening statements. (Tr. 325.)

During Fields's trial, M.E. testified first. He stated that Fields sexually abused him fourteen to fifteen years earlier, when he was seven and eight years old and Fields was his babysitter. (Tr. 426-37.)

The trial court then ruled that D.S. should be allowed to testify. Fields's attorney renewed the objections he originally made in his motion in limine, which sought to bar the testimony of M.E., D.S. and C.C. (Tr. 438.) The trial court overruled those objections. (Tr. 438.)

D.S. testified that Fields was a friend of her family and had raped her twenty-two years earlier, in 1989, when she was twelve years old. (Tr. 438-43.)

Finally, C.C. testified that Fields sexually abused him two or three years earlier, when C.C. was twelve or thirteen years old and Fields was his babysitter. (Tr. 443-50.)

Having been unsuccessful in getting the testimony of these three witnesses

excluded, Fields's attorney did the only thing left for him to do. In his closing argument, he repeatedly emphasized that "the only victim that you are here ruling on is [D.A.]," not M.E., D.S. or C.C. (Tr. 472, 474, 477.)

Fields now contends that his trial attorney should have made the following additional challenges to the testimony of M.E., D.S. and C.C.:

(1)     Regarding M.E., Fields contends that: (a) the statute of limitations had expired on the sexual assaults alleged by M.E.; (b) no court "had jurisdiction" over the criminal charges related to his allegations;[8] and (c) in a prior case, M.E. admitted he was a felon, but the state failed to disclose those facts to Fields's attorney prior to trial. *Doc. 1, at 4, 7; Doc. 15, at 5, 8-11; Doc. 20, at 3-4*.

(2)     Regarding D.S., Fields contends that: (a) although she testified that Fields "raped" her, he had been "cleared" of the rape charge when he passed a polygraph test;[9] (b) she had six prior felonies under a different last name, which the state failed

---

[8]In an order dated March 5, 2012, in Sebastian Co. Case No. CR2011-362, the trial court held it was "without jurisdiction" because Fields had been charged under the wrong statute. *Doc. 15, at 21-22*. In two other criminal cases involving M.E.'s allegations (Sebastian Co. Case Nos. CR2010-136 and 2010-137), Fields was acquitted on one count of second-degree sexual assault and convicted on the other. *Fields v. State*, 2012 Ark. App. 269.

[9]Fields pled guilty to a reduced charge of first-degree sexual abuse in connection with the 1989 incident with D.S. (Tr. 484.)

to disclose;[10] (c) her testimony at Fields's 2011 trial differed from her statement given in 1989; (d) her testimony was found inadmissible in another criminal case; (e) she "committed perjury"; and (f) her allegations concerned Fields's alleged criminal conduct committed more than twenty-two years earlier. *Doc. 1, at 4, 7; Doc. 15, at 1-3, 9-11; Doc. 20, at 1-2.*

(3)   Regarding C.C., Fields contends that: (a) the prosecutor dropped the charges against Fields that were based on C.C.'s allegations;[11] and (b) the state failed to disclose that C.C. "was recently released from a boy's home." *Doc. 1, at 7; Doc. 15, at 8-11; Doc. 28.*

Even if Fields's trial counsel's conduct "fell below an objective standard of reasonableness," because he failed to obtain additional evidence and question M.E., D.S. and C.C. in all the ways Fields now specifies, he has *not* established a reasonable probability that, if his trial counsel had performed differently, it would have made a difference in the outcome of his criminal proceedings.

First and most importantly, the Arkansas Supreme Court held that, *without*

---

[10]In support of this claim, Fields cites a pleading filed by the state public defender, indicating that office had represented D.S. in at least six criminal or juvenile cases. *Doc. 15, at 19-20*. (*See* Tr. 106-07.)

[11]The Court has electronically accessed the court records in Crawford County Case No. 17CR11-522. According to those records, the trial court entered an order, on November 15, 2012, granting the state's motion to *nolle pros* the charge pending against Fields for allegedly raping C.C. *See Doc. 28, at 3-4.*

*reliance on the testimony of M.E., D.S. or C.C.*, the evidence at Fields's trial was sufficient to support the jury's verdict. *See Fields*, 2012 Ark. 353 at 3-5. Thus, even if trial counsel had been successful in excluding the testimony of all three of those witnesses, Fields cannot, as a matter of law, establish a reasonable probability that the outcome of his criminal proceedings would have been different.

Second, Fields has not established a reasonable probability that, if his trial counsel had made additional challenges to the testimony of those three witnesses, it would have resulted in the exclusion of their testimony or a different verdict by the jury. Fields's trial counsel filed a motion in limine to exclude their testimony and did an able job of arguing that motion before the court. At trial, he renewed his objections to the admissibility of that testimony, and aggressively cross-examined each of the witnesses, asking about their ages when Fields allegedly assaulted them, and about their lack of knowledge of the allegations being made by D.A. Finally, in his closing argument, Fields's counsel emphasized to the jury that the prior bad acts testimony from these witnesses had little, if any, relevance, and he preserved the admissibility issue for appeal, where it was fully argued, but ultimately rejected by the Arkansas Supreme Court. *See Fields*, 2012 Ark. 353 at 5-8.

Certainly, the records in the underlying criminal cases suggest that some of the allegations by M.E., D.S. and C.C. about how Fields had sexually abused them did

not, or could not, support criminal charges or convictions. However, this in no way affected the admissibility of their testimony. *See Allen v. State*, 287 S.W.3d 579, 585 (Ark. 2008) (Rule 404(b) "makes no distinction between substantiated and unsubstantiated conduct or between charged and uncharged conduct"); *Bell v. State*, 266 S.W.3d 696, 705 (Ark. 2007) (application of the pedophile exception "does not require that the prior act be charged or substantiated"). In addition, it is undisputed that, at the time of Fields's pretrial hearing and jury trial, criminal charges were still pending against him in separate cases involving M.E. and C.C. The subsequent dismissal of those charges had *no bearing* on how Fields's trial counsel performed during his trial.

In the same vein, the fact that some of these witnesses had undisclosed "criminal histories" would not have prevented the admission of their testimony. *See Allen*, 287 S.W.3d at 586 (trial court did not abuse its discretion in permitting admitted pedophile to testify that defendant abused him as a child). M.E. testified that he had prior "drug charges" (Tr. 426), and Fields has not established that D.S. or C.C. had prior criminal convictions that would have been admissible under Arkansas's evidentiary rules, much less that the disclosure of those convictions would have led

to the exclusion of their testimony.[12] Furthermore, in light of Fields's counsel's other efforts on cross-examination to undermine the credibility of these three witnesses, Fields has not shown a reasonable probability that the jury would have rendered a different verdict had counsel asked additional questions about any of their alleged criminal histories. *See Dansby*, 766 F.3d at 835.

Fields has not established a "substantial" and meritorious ineffective-assistance-of-counsel claim arising from the conduct of his attorney in seeking to exclude the prior bad acts testimony of M.E., D.S. and C.C. Thus, the *Martinez* exception cannot excuse Fields's procedural default of that claim. Accordingly, this ineffective-assistance-of-counsel claim is without merit.

### 2.    Trial Counsel's Alleged Failure to Notify Fields of Plea Offer

Fields alleges that, at a plea hearing on September 9, 2011, the prosecutor notified the court that she had sent a plea offer to Fields's attorney. He alleges that his attorney never notified him of this written plea offer, which recommended a lesser sentence than the life term he ultimately received. He says that, if counsel had discussed this alleged plea offer with him, there is a reasonable probability that he would have accepted it; the prosecutor would have agreed to it; and the trial court

---

[12]*See* Ark. R. Evid. 609(a) (to be admissible, conviction must be punishable by death or imprisonment in excess of one year, or involve dishonesty or false statement), 609(b) (convictions that are more than 10 years old are inadmissible), 609(d) (juvenile adjudications are generally inadmissible).

would have approved it. *Doc. 1, at 4; Doc. 15, at 4-5; Doc. 17, at 2-3; Doc. 23.*

A criminal defense lawyer has a "duty [under the Sixth Amendment] to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). However, to demonstrate that an attorney's failure to communicate a plea offer resulted in *prejudice*, the defendant must establish a reasonable probability that he would have accepted the plea offer had it been communicated to him, and that neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. *Id.* at 1410.

The record in this case fails to support Fields's contention that: (1) the prosecutor communicated a plea offer to his attorney on September 9, 2011; and (2) his attorney was constitutionally ineffective because he failed to communicate that plea offer to him.

First, there is *no evidence* that the prosecutor made a plea offer to Fields's counsel on or around September 9, 2011. In response to this Court's order to provide evidence of "any plea offers in Case No. CR2011-29," *Doc. 18*, Respondent provided the Court with a copy of an e-mail that was sent to Fields's attorney, dated *January 27, 2011*. *Resp't Ex. 19, at 6*. In this e-mail, the prosecutor extended a "final offer" in three of Fields's cases, including CR2011-29:

> **Will amend CR 2011-29 to sexual assault 2nd degree; 20 years ADC**
> CR2010-136; 20 years ADC, concurrent with CR 2011-29
> CR 2010-137; 20 years SIS consecutive to both CR 2010-136 and CR 2011-29

*Id.* (emphasis added).

Fields *does not allege* that his trial counsel failed to communicate the terms of the January 27, 2011 plea offer to him. Rather, he asserts only that his trial counsel failed to notify him of a written plea offer made by the prosecutor *on or around September 9, 2011*. While the trial court set a "plea deadline date" of August 30, 2011 (Tr. 145), nothing in the record suggests that the prosecutor extended another formal plea offer after the January 27, 2011 e-mail.

Respondent also provided the Court with Sebastian County Circuit Court records, along with a letter from the court reporter, stating that: (1) the trial court's criminal docket sheet for Case No. CR2011-29 does *not* reflect that a hearing took place in Fields's case on September 9, 2011; (2) although Case No. CR2011-29 was listed on the court reporter's daily docket for September 9, 2011, the court reporter's written records do *not* reflect that a hearing took place in Fields's case that day;[13] and (3) based on the court reporter's "back up tape" of hearings that took place on September 9, 2011, Case No. CR2011-29 was not called, and nothing about Fields's

---

[13]The court reporter noted that it was "not unusual" for a case to be put on the docket but later removed before court begins. *Resp't Ex. A to Doc. 24.*

case was mentioned in open court.[14] *Resp't Ex. A & B to Doc. 24; Resp't Ex. 18.*

In his federal habeas papers, *Doc. 25*, Fields asked this Court to subpoena documents from *Fields v. Sebastian County Sheriff's Office, et al.*, W.D. Ark. No. 2:11cv02189-RTD, a § 1983 civil rights action he filed in the Western District of Arkansas in 2011. He claims that documents in that civil action will prove that he was at the Sebastian County courthouse on September 9, 2011 for a plea hearing.

The Court has electronically accessed the records in W.D. Ark. No. 2:11cv02189-RTD. According to Fields's deposition testimony in that case: (1) he was injured during a fall at the courthouse *on September 14, 2011*; (2) he was in the courthouse on that date for "a plea" on the rape charge in CR2011-29; and (3) he "didn't take the plea bargain" offered on September 14, 2011, and *later* went to trial.[15] *Doc. 42-1, at 8-9, 18-21, 34, 38-39*. Even if Fields was mistaken about the date of his fall at the courthouse and it had taken place on September 9, 2011, he testified in his

---

[14]The court reporter noted that Fields's attorney, Otto Fry, was present in the courtroom on September 9, 2011. *Id.* According to the court reporter's records, Fry was the attorney for Fields and another defendant. *Resp't Ex. B to Doc. 24.*

[15]The record clearly establishes that Fields's trial, on the charge of raping D.A., commenced on September 13, 2011, and lasted only one day. (Tr. 262-503.) Yet, in Fields's deposition, he states that he was in a cell at the Sebastian County Courthouse, on September 14, 2011, when his attorney discussed with him an alleged "plea" to the charge of raping D.A. Suffice it to say, Fields's deposition testimony in the § 1983 action is in direct conflict with the undisputed fact that a jury convicted him of that offense on September 13, 2011.

deposition that he said "*no*" when his attorney asked him if he was "going to take the plea." His deposition testimony also makes it clear that: "I wasn't going to take a plea, I had told them." *Id. at 18-20.*

The record in Fields's § 1983 case against the Sebastian County Sheriff's Office, viewed in a light most favorable to him, establishes only that: (1) a few days before he went to trial in CR2011-29, his attorney may have communicated a verbal plea offer to him; and (2) Fields unequivocally told his attorney he would *not* "take the plea." Thus, for purposes of this habeas action, Fields has *not* shown that: (1) his trial counsel failed to communicate a plea offer as required by *Frye*; or (2) there is a reasonable probability that, if trial counsel had performed differently, Fields would have accepted a plea offer, the prosecutor and trial court would have approved it, and the "end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 132 S. Ct. at 1409.

Because Fields has not established a "substantial" and meritorious ineffective-assistance-of-counsel claim arising from an allegedly "uncommunicated" plea offer, the *Martinez* exception cannot excuse his procedural default of that claim. Accordingly, this ineffective-assistance-of-counsel claim is without merit.

### B.   <u>Alleged Prejudice Arising from Fields Being Shackled in the Presence of the Jury</u>

Fields argues that the trial court erred by requiring him to be shackled in front

of the jury, wearing "belly chains" and a leg brace that "rattled" when he entered the courtroom.[16] He argues that this violated his constitutional rights by undermining the presumption of innocence and unfairly prejudicing the jury. *Doc. 1, at 5; Doc. 15, at 6-7.* Respondent contends that, while Fields raised this claim in his first state habeas petition, the claim is procedurally defaulted because: (1) Fields improperly filed the habeas petition in the county where he was convicted, rather than the county in which he was incarcerated; (2) his allegation of "trial error" was not cognizable in a state habeas claim; and (3) he did not appeal the denial of the state habeas petition. *Doc. 11, at 7 & 11; see Resp't Ex. 10 & 11.*

Fields does not dispute that he failed to challenge the alleged trial court error in the appropriate manner, and he gives no reason for not doing so. The equitable exception announced in *Martinez* does *not* extend to procedurally defaulted claims of trial error. *Dansby*, 766 F.3d at 833-34. Accordingly, this Court is procedurally barred from considering this claim.

### C.   Fields's Sufficiency of the Evidence Claim

Fields argues that the trial court abused its discretion in denying his motion for directed verdict, which is essentially a challenge to the sufficiency of the evidence.

---

[16]According to the trial transcript, Fields's attorney objected to Fields's being "restrained in a shackle." The trial court responded that Fields was *not* "shackled," but only "had a leg brace around his knee." (Tr. 263.)

Although his argument is unclear, Fields seems to suggest that the evidence was insufficient because his conviction was impermissibly based on "bad character testimony." *Doc. 1, at 6; Doc. 15, at 8.*

Evidence is constitutionally sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Where, as here, the state courts have determined that the trial evidence is sufficient, that decision may not be overturned on federal habeas review simply because the federal court disagrees with the state court. *Id.* at 2062. Instead, under 28 U.S.C. § 2254(d)(1), the federal court may grant habeas relief only if the state court decision was contrary to, or an objectively unreasonable application of, clearly established United States Supreme Court law. *Id.*

In Fields's direct appeal, the Arkansas Supreme Court expressly found that the trial evidence was sufficient to support his rape conviction. *Fields*, 2012 Ark. 353 at 3-5. Contrary to Fields's suggestion that this determination was based on "bad character testimony," the Court found that *the victim's testimony alone* was sufficient to sustain his conviction:

> [A]ll that is needed for a rape conviction is the uncorroborated testimony of the child victim. *Witcher* [*v. State*, 2010 Ark. 197, 362 S.W.3d 321];

*Rohrbach v. State*, 374 Ark. 271, 287 S.W.3d 590 (2008); *Jones v. State*, 300 Ark. 565, 780 S.W.2d 556 (1989) (holding that the testimony of a child victim, standing alone, was sufficient to sustain a rape conviction where victim clearly identified defendant and testified to the acts). ...

To prove rape, the State was required to show that there was penetration, however slight, of the labia majora of the victim. ... D.A.'s testimony about the incident satisfied the State's burden, and accordingly, there was substantial evidence to support appellant's conviction. For these reasons, we hold that the circuit court properly denied appellant's motion for directed verdict.

*Id.* at 4-5.

Similarly, under federal law, a victim's testimony alone is sufficient to meet the *Jackson* standard of due process. *See Tibbs v. Florida*, 457 U.S. 31, 45 n.21 (1982) (noting that, "[i]f the jury believed the [victim's testimony], the State's presentation was more than sufficient to satisfy due process"); *Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000) (under *Jackson*, a "victim's testimony is, by itself, normally sufficient to sustain a conviction").

Thus, the Arkansas Supreme Court's decision was not contrary to the legal standard articulated in *Jackson*. *See Dansby*, 766 F.3d at 817-18 (Arkansas courts' standard for assessing sufficiency of the trial evidence is "consistent with *Jackson*"). Moreover, the state court's determination that the trial evidence was sufficient was not objectively unreasonable.

Accordingly, the Court concludes that Fields's sufficiency-of-the-evidence

claim is without merit.

### D.   Fields's Prior Bad Acts Claim

Finally, Fields contends that the trial court erred in admitting the prior bad acts testimony of witnesses M.E., D.S. and C.C. *Doc. 1, at 6; Doc. 15, at 8-11.*

As previously discussed, the trial court conducted a lengthy pretrial hearing on the admissibility of the testimony of these three witnesses. After hearing the evidence and arguments of counsel, the trial court: (1) ruled that M.E. and C.C. would be allowed to testify; and (2) reserved ruling on the admissibility of testimony from D.S. (Tr. 325.) During the trial, the court ruled that D.S.'s testimony was admissible. (Tr. 438.)

On appeal, the Arkansas Supreme Court rejected Fields's argument that the trial court abused its discretion in allowing testimony from these three witnesses:

> Evidence is not admissible under Rule 404(b) simply to show a prior bad act. In reviewing the admission of evidence under Rule 404(b), this court has observed that a circuit court has broad discretion in deciding evidentiary issues, and its decisions are not reversed absent an abuse of discretion.
>
> When the charge concerns the sexual abuse of a child, evidence of other crimes, wrongs, or acts, such as sexual abuse of that child or other children, is admissible under the "pedophile exception" to show motive, intent, or plan pursuant to Ark. R. Evid. 404(b). We have approved allowing evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. The rationale for this exception is that such evidence helps

to prove the depraved sexual instinct of the accused. For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. We also require that there be an "intimate relationship" between the perpetrator and the victim. Further, it is admissible to show the familiarity of the parties, disposition, and antecedent conduct toward one another and to corroborate the testimony of the victim.

....

Appellant contends that these three witnesses' testimony should not have been admitted because the acts alleged by M.E., D.S., and C.C. were not sufficiently similar to the acts alleged by D.A. ... [T]his testimony squarely falls under the pedophile exception to Rule 404(b). Like D.A., these three victims were young children from the ages of seven to twelve at the time of the abuse, and appellant was either a babysitter or a close family friend to all three children. Thus, appellant was in an intimate relationship with the three victims. Additionally, appellant acted by cornering these children alone in their homes, forcing himself upon them, and engaging in deviate sexual activity. Further, this court has rebuffed arguments regarding different methods of rape when considering 404(b) evidence, particularly in sex crimes against children. Therefore, we hold that the circuit court did not abuse its discretion in admitting this evidence.

*Fields*, 2012 Ark. 353 at 5-8 (citations omitted).

Importantly, in a § 2254 habeas action, the admission of testimony pursuant to state rules of evidence can only form the basis for federal habeas relief if the evidentiary ruling "infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Sera v. Norris*, 400 F.3d 538, 546-47 & n.8 (8th Cir. 2005). In making this determination, a court must "review the totality of the facts in the case and the fairness of the whole trial." *Harris v. Bowersox*,

184 F.3d 744, 752 (8th Cir. 1999). Furthermore, "there is no due process violation simply because a trial court admits evidence of a defendant's uncharged bad acts." *Id.*

The United States Supreme Court has declined to hold that evidence of other crimes or wrongs is so prejudicial that its admission violates fundamental conceptions of justice or the due process test. *Estelle v. McGuire*, 502 U.S. 62, 75 & n.5 (1991) (stating that the Court was expressing no opinion on whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime); *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (rejecting the argument that due process requires the exclusion of prejudicial evidence of prior crimes); *see also United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998) (rejecting due process challenge and upholding constitutionality of federal rule of evidence allowing admission of "evidence that the defendant committed any other child molestation"). Thus, there is no binding precedent holding that a state violates due process by admitting evidence of a defendant's prior bad acts.

Furthermore, considered as a whole, the record demonstrates that Fields's trial was not rendered fundamentally unfair by the admission of this evidence. The fairness of Fields's trial was safeguarded by the trial court's careful consideration of the proposed testimony of M.E., D.S. and C.C. in a pretrial hearing; the court's individualized determinations regarding each witness's testimony; and its reliance on

Ark. R. Evid. 404(b) and the specific requirements of the pedophile exception, as interpreted by the governing case law, to justify the admission of that testimony. The Arkansas Supreme Court later affirmed the admissibility of this testimony under Arkansas's evidentiary rules.

Finally, the Arkansas Supreme Court explicitly found that other trial evidence – *separate and apart from any prior bad acts evidence* – was sufficient to sustain Fields's rape conviction. *See Harris*, 184 F.3d at 755 (no due process violation when "[a]ll of the elements necessary to prove the crime were met irrespective of [the challenged evidence of prior bad acts]").

Accordingly, Fields's prior bad acts claim is without merit.

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, *Doc. 1*, be DENIED, and that this case be DISMISSED in its entirety, with prejudice, because all of Fields's claims are procedurally defaulted or without merit.

IT IS FURTHER RECOMMENDED that a Certificate of Appealability be DENIED, as Fields has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254

Cases in United States District Courts.

DATED THIS <u>16th</u> DAY OF January, 2015.

_____

UNITED STATES MAGISTRATE JUDGE